## COMMONWEALTH *vs.* RICHARD MAZZONE.

No. 00-P-1095.

Suffolk. November 5, 2001. - June 27, 2002.

Present: LENK, GILLERMAN, & COHEN, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Hearsay, Fresh complaint, Relevancy and materiality. *Practice, Criminal,* Hearsay.

At the trial of indictments charging rape of a child under the age of sixteen and indecent assault and battery upon a child, the judge erred in admitting in evidence a hearsay letter written by the complainant after he faced criminal charges for threatening, robbing, and assaulting the defendant [347-348]; fresh complaint testimony of the complainant's mother, brother, and counselor that was not seasonable in the circumstances [348-352]; and police testimony concerning a wholly immaterial matter [352]; given the cumulative effect of these errors, all of which concerned evidence implicating credibility in a trial in which credibility was the only real issue, this court reversed the defendant's convictions [352-353]. .

INDICTMENTS found and returned in the Superior Court Department on October 9, 1996.

The cases were heard by *Thomas E. Connolly,* J.

The case was submitted on briefs.

*Kevin J. Reddington & Stephanie M. Glennon* for the defendant.

*Kajal K. Chattopadhyay,* Assistant District Attorney, for the Commonwealth.

LENK, J. After a jury-waived trial, the defendant Richard Mazzone was found guilty of multiple counts of rape of a child under the age of sixteen, (G. L. c. 265, § 23), and of indecent assault and battery upon a child both before and after the child had attained the age of fourteen (G. L. c. 265, §§ 13B, 13H). On appeal, the defendant asserts error in the admission of certain evidence and challenges the judge's determination that he had

knowingly and voluntarily waived his right to a jury trial.[1] We reverse.

*Background.* The complainant and the defendant met in 1990 when the former was ten years old and the latter was about twenty-one years old. The two spent considerable time together over the next four years, with the defendant informally acting as the complainant's proverbial "big brother," until in late 1994 or early 1995, they came to a parting of the ways. The complainant renewed contact with the defendant in August, 1996, when, over a period of several days, he left threatening phone messages and later physically threatened, robbed and assaulted the defendant. When explaining this criminal behavior to police after a warrant had issued for his arrest, the complainant accused the defendant of having sexually abused him numerous times, in different ways, and at a variety of locations in the period of time when he was between eleven and fifteen years of age. The defendant denied that any sexual activity had ever taken place during their relationship.

At trial, the complainant testified that he and the defendant had engaged in acts of fellatio, masturbation and anal penetration (digital, penile and oral) on an almost daily basis over a four-year period beginning when he was eleven years old. (The indictments charge acts occurring between September 1, 1990, and October 31, 1994.) The sexual activities took place in the defendant's bedroom at his parents' home, in the defendant's own later-acquired apartment, in the defendant's car, on a mattress in the back room of a convenience store that the defendant had briefly owned in 1991, in the studio apartment of the defendant's girlfriend, and in the bathroom of a Florida hotel room.

Since the defendant denied all alleged sexual activity and his defense was in essence to characterize the abuse allegations as the fabrications of a habitual liar seeking to evade criminal liability, the central issue at trial was credibility. In addition to

[1]The Commonwealth was not permitted to present oral argument, see Mass.R.A.P. 19(c), in light of its failure to file a brief in timely fashion. Despite the unexcused late submission of such brief, the panel members have reviewed the contentions raised therein and the cases to which the Commonwealth has called our attention. We note, however, that counsel of record for the Commonwealth was not assigned to the case by the district attorney until the Commonwealth's brief was already many months overdue.

o

the complainant, the Commonwealth presented three fresh complaint witnesses (who corroborated that, at different times in 1995, the complainant had made a complaint of abuse to them), three police officers (one testified to certain statements that the defendant had made after his arrest; one testified as to the defendant's failure initially to identify the complainant as his assailant when reporting the August, 1996, incident; one testified to seeing a mattress in 1996 in the store the defendant owned in 1991) and two experts (a psychologist and a pediatrician who testified as to behavioral and physical symptoms of sexual abuse).

The defense offered testimony geared to establishing the utter implausibility of the complainant's account. The defendant's former girlfriend, his parents, and his two sisters each contradicted key details of the complainant's testimony. The defendant testified in the same vein, denying that he had ever slept in the same bed with or engaged in sexual contact with the complainant, calling attention to the complainant's prior dishonesty and long-term substance abuse, and attributing the dissolution of their friendship to the complainant's drug use. It is against this backdrop that we analyze the defendant's claims of error at trial.

*Discussion.* The defendant contends that the judge erred in admitting (a) a letter written by the complainant after he faced criminal charges for the August, 1996, incidents; (b) the fresh complaint testimony of the complainant's mother, brother and counselor; (c) police testimony concerning the mattress; and (d) expert testimony bolstering the complainant's credibility. We consider each in turn.

*The letter.* The defendant objects for the first time on appeal to the admission of a letter written by the complainant several weeks after his arrest and approximately two years after the last charged act of sexual abuse. The letter, written to "no one in particular," is a subjective recounting of the complainant's relationship with the defendant over the years and leading up to the complainant's August, 1996, criminal acts, and includes graphic details of the pair's sexual and drug activities. At trial, when his direct examination as to much the same thing was about over, the complainant read the letter aloud to the judge. The judge first made inquiry of defense counsel as to whether he had an objection; he replied that he did not.

Even if arguably relevant on the question whether the complainant's allegations of abuse were concocted to escape criminal liability, the letter in question is textbook inadmissible hearsay. It was not admissible under any exception to the hearsay rule. See Liacos, Massachusetts Evidence, § 8.2.6 (7th ed. 1999). The letter was not admitted, as the Commonwealth now suggests, for the limited purpose of showing the complainant's state of mind (even if it were relevant for that purpose, itself a questionable proposition), but was instead introduced to prove the truth of its contents, i.e., that events happened as therein described. The admission of the letter in evidence "permitted the complainant to corroborate [his] own testimony and bolster [his] own credibility." See *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 869 (2001). It should not have been admitted.[2]

That being said, the error was not preserved by objection and we must determine whether it created a substantial risk of a miscarriage of justice. We are quite mindful that this was not a jury trial. See *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 308 (1992) (judge is presumed to apply correct legal principles as trier of fact). Nonetheless, the prosecution placed great emphasis on the letter's probative value[3] and the complainant's credibility was central to the trial. Were this the only evidentiary misstep, though the question would be close, we would

[2]Despite the Commonwealth's claims to the contrary, the question of the admissibility of the letter is not controlled by *Commonwealth* v. *Gonsalves*, 23 Mass. App. Ct. 184, 187-188 (1986); *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 436-437 (1994); *Commonwealth* v. *Errington*, 390 Mass. 875, 878-882 (1984); or any of the other similar cases cited in the government's brief. In those cases, hearsay testimony was deemed admissible where relevant to rebut specific impeachment evidence. In *Gonsalves* and *Swain*, there were suggestions of recent contrivance on the part of the complaining witness; in *Errington*, the hearsay was admitted to explain the unusual timing of fresh complaint disclosures. By contrast, the letter here, admitted during the complainant's direct testimony, plainly was *not* used to rehabilitate his as yet unimpeached direct testimony. Rather, the only possible purpose for admitting the complainant's self-serving letter, written after his arrest and at a time when there was maximum motive to lie, was to prove the truth of its contents, a patent violation of the hearsay rule.

[3]In her closing, the prosecutor referred to the letter as "[o]ne of the most powerful pieces of evidence," as being "insightful about dynamics of child abuse and into the mind of a child that's confused and abused by what happened to him." The judge interrupted the closing at this point to elicit the exhibit number of the letter. After providing the requested information, the

not think it so prejudicial as to require the reversal of the conviction. There are, however, other evidentiary problems.

*Fresh complaint.* Having declined to rule in limine on the proffered fresh complaint testimony of the complainant's mother, brother and counselor, the judge admitted such testimony over objection at trial.[4]

The mother testified in essence that the complainant expressed suicidal thoughts to her in February, 1995, before disclosing that he had been abused by the defendant when he was eleven years old. The complainant was fifteen at the time of the disclosure, which took place about four months after the last charged sexual act.

The complainant's brother testified that in June, 1995, the complainant told him that the defendant molested him when he was eleven years old. This disclosure occurred almost eight months after the last charged sexual act.

A counselor whom the complainant began seeing in June, 1995, testified as to two episodes of disclosure. The first was in June when the complainant reported that a family friend named Rick, whom he loved, had molested him, primarily in Rick's bedroom. The second disclosure to which he testified was in October, almost twelve months after the last charged sexual act, when the complainant added many details concerning the history of abuse and about the sex acts themselves. The therapist recounted at trial the complainant's description of the inaugural sexual act at age eleven involving mutual masturbation, the later escalation into "humping," and then, when the complain-

prosecutor continued: "[I]n the letter, there are explicit details . . . about how it happened and how it escalated."

[4]In ruling on the "freshness" of the fresh complaints, the judge overruled the defendant's objection as to the mother's testimony after confirming that her son had made the disclosure in February, 1995, when he was fifteen years old. He explained his ruling by saying that "based on the evidence that we have thus far that this basically is in the court's discretion and the [c]ourt so finds that that evidence will be helpful and it outweighs any kind of prejudice to the defendant." When objection was made to the "fresh" complaints the complainant made in June and October, 1995, to his counselor, the judge said only that "the [c]ourt is going to make the same ruling as it made on the previous person." In like manner, he overruled the objection to the brother's testimony of the June, 1995, disclosure by the complainant, adding that it was admitted solely to show that the complaint was made and for no other reason.

ant was thirteen, anal sex. The complainant had described to the counselor the physical discomfort of the penetration and the sexual abuse that had occurred while on two trips to Florida.

The defendant maintains that the foregoing fresh complaint testimony was admitted in error because it was not fresh. He contends that what the complainant disclosed first to his mother when he was fifteen concerned events that were said to have happened four years before that. Otherwise put, the defendant measures freshness by the time that elapsed between the abusive events recounted in the complaints and the dates on which the complainant made the disclosure. The Commonwealth, in contrast, suggests that the proper measure is between the time of the last alleged act of abuse and the time of disclosure. Neither contention quite carries the day. As Justice Kaplan has said, writing for the court, "[i]n considering the appeal, we do well to recur to fundamentals." *Commonwealth* v. *Dion*, 30 Mass. App. Ct. 406, 412 (1991).

The fresh complaint doctrine survives, notwithstanding its shaky footing in the law of evidence, because it "has a measure of prophylactic or negative value: a victim of such an offense might be expected to cry out in complaint to third persons; if the victim did not do so, his or her testimony that a criminal event occurred may become clouded." *Commonwealth* v. *Dion*, *supra* at 412. See *Commonwealth* v. *Licata*, 412 Mass. 654, 658 (1992). Its function and purpose is purely corroborative — the fresh complaint witness may testify as to the details of the complaint made to him or her by the victim in order to corroborate the victim's testimony as it relates to the credibility of the victim's trial testimony. *Commonwealth* v. *Quincy Q.*, 434 Mass. at 868, 869. Such limited purpose testimony is "mischievous" and must be rejected "unless the complaint is truly 'fresh,' " *Commonwealth* v. *Dion*, *supra* at 412. Freshness, however, "is not solely a question of the clock or calendar, yet the passage of time is surely important: as time extends itself, a complaint loses character as a spontaneous accusation after grievous wrong; moreover, opportunity grows for invention or distortion of an event by mistake, burst of memory, fantasizing, contrivance, etc." *Id.* at 413.

In determining the admissibility of fresh complaint evidence,

the test to be applied is "whether the victim's actions were reasonable in the particular circumstances." *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 439 (1994), quoting from *Commonwealth* v. *McDonough*, 400 Mass. 639, 652 (1987). When there has been delay in the victim's making complaint, consideration should be given to factors which might explain that delay, particularly where the complainant is a child. Such factors include "the child's age, the length of time the child has been away from an abusive setting, whether the perpetrator used threats or coercion, and whether the perpetrator is a relative or close friend of the child." *Commonwealth* v. *Dockham*, 405 Mass. 618, 626 (1989). See *Commonwealth* v. *Shiek*, 42 Mass. App. Ct. 209, 211 (1997).

In ruling admissible the mother's fresh complaint testimony, it appears that the judge did not take into consideration any factor other than the period of time between the last charged act of sexual abuse and the date of disclosure approximately four months later. In ruling admissible the brother's and counselor's testimony of still later disclosures, it is not clear that even the further passage of time itself was given any consideration. See *Commonwealth* v. *Johnson*, 35 Mass. App. Ct. 211, 217 n.11 (1993).

While the last alleged act of abuse is surely relevant, it is not the only relevant factor, particularly when months have passed and the disclosures are made seriatim by one who is no longer a young child at the time. The time span of the delay in reporting — approximately four to twelve months after the last charged act of abuse — may itself fall within the outer time limits of the decided cases but, because other factors do not adequately explain the delay, the complaints here nonetheless teeter on what we have called "the borderline of admissibility." *Commonwealth* v. *Swain*, 36 Mass. App. Ct. at 441. The complainant was a teenager when he made complaint to third persons. He had lived at home at all relevant times, not with the defendant, who was a close friend, to be sure, but not one who was in a position of authority and capable of exercising control over him. Although during their relationship the complainant looked up to and loved the defendant, there was no suggestion that the defendant had ever threatened or intimidated him. Other

than the initial complaint he made to his mother, his remaining complaints seem to have less of the character of spontaneous revelations than they do of responses evoked in a therapeutic setting.

Were the only fresh complaint testimony admitted that of the mother, and perhaps even that of the brother, we would be less inclined to view the judge's decisions as falling outside of his considerable discretion. Even though the complainant's disclosure to his mother concerned only acts occurring when he was eleven, he reported it four months after the last charged act, and this delay is perhaps attributable to the persistence of the sexual relationship through his young adolescence, the defendant's brotherly influence, and the shame and humiliation attendant to revelations of this nature. Nevertheless, when all the pertinent factors are considered, "they raise real doubt about the timeliness of the complaint . . . ." *Commonwealth* v. *Swain*, 36 Mass. App. Ct. at 442. The doubt is even more pronounced about the complaint to the brother, which was further removed in time. Still, the brother's and the mother's testimony were in substance the same and each was largely devoid of inflammatory detail. It is quite otherwise, however, with the belated and detailed disclosures to which the counselor testified, which were not seasonable in the circumstances. Combined with the mother's and brother's fresh complaint testimony, the error in admitting the complaints was material in this case, which involved "a contest of word against word." *Commonwealth* v. *Johnson*, 35 Mass. App. Ct. at 217.

*The mattress.* The defendant claims that, over objection, the judge improperly admitted testimony from a police officer regarding a mattress found in a store more than five years after the defendant owned the store. We agree. Testimony of a mattress in a store that the defendant had incontrovertibly ceased to own five years before is wholly immaterial to corroborate the mattress's existence and use as a sexual platform during the defendant's ownership.

*Conclusion.* Given the erroneous admission of the letter, certain of the fresh complaint testimony, and of testimony concerning the mattress, we cannot be sanguine as to whether

the defendant was prejudiced.[5] The errors all concern evidence implicating credibility in a trial in which credibility was the only real issue. "The record does not have a shred of corroboration, in the usual sense, of the testimony that the . . . alleged criminal act actually happened. The case was thus one of word against word." *Commonwealth* v. *Dion,* 30 Mass. App. Ct. at 415. While each error in isolation might not have required reversal, we conclude that the cumulative errors "fatally infected the judgment of conviction." *Commonwealth* v. *Mills,* 47 Mass. App. Ct. 500, 507 (1999). See *Commonwealth* v. *Cancel,* 394 Mass. 567, 576 (1985); *Commonwealth* v. *Mc-Duffie,* 16 Mass. App. Ct. 1016, 1017-1019 (1983); *Commonwealth* v. *Sugrue,* 34 Mass. App. Ct. 172, 174-175 (1993); *Commonwealth* v. *Kines,* 37 Mass. App. Ct. 540, 543-544 (1994).

*Judgments reversed.*

---

[5]In view of the result we reach, we need only touch upon the defendant's challenges to the expert testimony and to the judge's acceptance of his jury trial waiver. As to the former, we discern no abuse of discretion in the admission of such testimony and, as to the latter, we think the point without merit in light of *Commonwealth* v. *Onouha,* 46 Mass. App. Ct. 904, 905 (1998).