COMMONWEALTH *vs.* VIRGIL L. BRAZIE.

No. 05-P-426.

Berkshire. March 7, 2006. - May 23, 2006.

Present: LAURENCE, BERRY, & DOERFER, JJ.

*Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confronta-
tion of witnesses. *Evidence,* Fresh complaint.

Discussion of the constitutional right to confrontation. [318-319]
At the trial of indictments involving separate complainants, the criminal
    defendant's constitutional right to confrontation was violated, resulting in a
    substantial risk of a miscarriage of justice, where one of the complainants
    ended her testimony before being cross-examined, defense counsel did not
    move to strike the testimony (which was material and directly incriminat-
    ing with respect to the indictment concerning the other complainant), and
    the judge allowed the jury to consider the testimony. [319-322]
At a rape trial, the judge did not err in allowing in evidence fresh complaint
    testimony from the victim's mother, where the seven-month delay in the
    victim's statements to the mother was reasonable given that the victim was
    only nine years old at the time she was abused, the alleged perpetrator of
    the abuse was her father, the defendant told her not to tell anyone, and the
    defendant was living downstairs from the child at the time the abuse
    occurred. [323-324]

INDICTMENT found and returned in the Superior Court Depart-
ment on August 22, 2003.

The case was tried before *Daniel A. Ford,* J.

*William A. Korman* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Com-
monwealth, submitted a brief.

BERRY, J. Given a violation of the defendant's constitutional
right to confrontation, we reverse the judgment in this case,
where the direct testimony of the defendant's younger daughter,
named in one of two indictments joined for trial (the other
indictment involved the rape of her older sister) was not stricken
from the record, although there had been no opportunity for

cross-examination by the defense. "[T]he decisions of [the United States Supreme] Court and other courts throughout the years have constantly emphasized the necessity for cross-examination as a protection for defendants in criminal cases. . . . There are few subjects, perhaps, upon which [the United States Supreme] Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." (Footnote omitted.) *Pointer* v. *Texas,* 380 U.S. 400, 404-405 (1965). See *Commonwealth* v. *Miles,* 420 Mass. 67, 71 (1995).

There is virtually no doubt that the testimony of the younger daughter — albeit incomplete, because she was unable to finish her direct examination, and was never cross-examined — remained of focus in the jury's deliberations, leading to conviction on the second indictment involving the defendant's other daughter. There was no defense motion to strike the testimony, but a required finding of not guilty was subsequently entered on the indictment involving the younger daughter. However, in the wake of an instruction by the judge that the indictment involving the younger daughter had been withdrawn from consideration, the jury, during their deliberations on the indictment involving the other daughter, sent a note to the judge inquiring about the propriety of their consideration of the younger daughter's testimony. Notwithstanding that this particular indictment had been withdrawn, and again with no defense objection, the judge answered this jury question in the affirmative, it appears, because there had been no defense motion to strike the testimony, and the judge considered the testimony as remaining a part of the trial record.

Given the foregoing, this appeal presents the "extraordinary" situation where, after a full review of the trial record, in our judgment, the defendant's conviction on the second indictment poses a substantial risk of a miscarriage of justice, such that we are "left . . . with a serious doubt that the defendant['s] guilt ha[s] been fairly adjudicated." *Commonwealth* v. *Amirault,* 424 Mass. 618, 646-647 (1997). In light of "serious doubt whether the result of the trial might have been different had the error[s]

not been made," we reverse the judgment. *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999).[1]

1. *Procedural trial background.* This case involved trial on two indictments charging the defendant with rape of his two daughters, Amy and Sarah,[2] who were, respectively, six and nine years old at the time of the alleged rapes, and eight and twelve years old at the time of trial. The younger daughter, Amy, became emotionally upset during her direct examination, repeatedly expressing that she was "scared" to testify. As her distress worsened, Amy could not continue. The prosecutor asked for a break, and Amy left the stand, her direct testimony remaining unfinished. There had been no cross-examination. All seemed to think that Amy would recover and return to the witness stand. However, at the close of the Commonwealth's case-in-chief, the prosecutor informed the judge that Amy would not be able to return to testify. Defense counsel — in an omission that constituted ineffective representation by trial counsel, see

[1] Due to a failure on the part of defense counsel, the confrontation clause error was not preserved by objection or a motion to strike. In cases addressing a constitutional confrontation clause violation, the harmless error standard of review generally governs. See, e.g., *Commonwealth* v. *DiBenedetto*, 414 Mass. 37, 40 (1992); *Commonwealth* v. *Miles*, 420 Mass. 67, 73 (1995); *Commonwealth* v. *Vardinski*, 438 Mass. 444, 452 (2003). It is an interesting question whether in the trial context an attorney can be deemed to have waived a defendant's right of confrontation and the heightened harmless error standard of review all because of the attorney's incompetent representation. We need not consider this further in this case. However, in *Commonwealth* v. *Amirault*, 424 Mass. 618, 646 (1997), the Supreme Judicial Court held that even errors of a constitutional dimension can be waived, and applied the substantial risk of a miscarriage of justice standard to the defendants' claims of confrontation clause violations. That case, however, involved collateral review in the context of the denial of a motion for a new trial. The instant case comes before our court on a direct appeal in which the less strict substantial risk of a miscarriage of justice standard of review comes into play, not by virtue of the defendant's burden to establish that justice warrants the allowance of a new trial motion, nor by virtue of any waiver by the defendant, but because of what was, in effect, a waiver by defense counsel. However, we need not further address the theoretical question whether, on direct review of a case such as this, the failings of counsel will always lead to a less heightened standard of appellate review than that usually applied to confrontation clause based error. This is so because whether we were to apply the harmless error standard, or the substantial risk of a miscarriage of justice standard (which the parties cite in their briefs, and under which we analyze the appeal), the same result obtains — reversal of the conviction.

[2] We use pseudonyms for the children.

note 1, *supra* — did not move to strike the testimony Amy had previously given. The trial judge did not do so sua sponte; the judge did, however, allow the defendant's motion for a required finding of not guilty on the indictment concerning the father's alleged rape of Amy.

At the close of the evidence, the judge instructed the jury that the indictment concerning the alleged rape of Amy had been removed from their consideration. As previously referenced, during deliberations the jury specifically inquired, by a written note to the judge, if they could consider Amy's testimony in connection with the indictment alleging rape of the older daughter, Sarah. In a colloquy with counsel, the judge stated that he thought the answer was "yes, they can consider all the testimony that the jury heard," and the judge wrote on the note sent by the jury the answer, "Yes, you may." Not only did defense counsel tender no objection to the judge's response, defense counsel stated on the record that the judge's response was "agreeable [to] the defendant." (As to the ineffectiveness of such representation, see note 1, *supra*, and accompanying text.) The jury subsequently returned a verdict of guilty on the indictment involving Sarah.

2. *The constitutional right to confrontation.* On appeal, represented by new counsel, the defendant argues that reversal is compelled because his constitutional right to confrontation was violated.

Confrontation by the accused of the witnesses at trial, and the inextricably intertwined vindicating right of cross-examination, are protected under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. "It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him." *Pointer* v. *Texas*, 380 U.S. at 404. The right to confrontation in a criminal trial is important and fundamental to due process and a fair trial. See *Commonwealth* v. *Durham*, 446 Mass. 212, 230 (2006) (Marshall, C.J., dissenting) ("The right of confrontation is a central mechanism protecting a criminal defendant from an unjust conviction"). "Confrontation means more than being allowed to confront the witness physically. 'Our cases construing

the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas* v. *Alabama,* 380 U.S. 415, 418 (1965)." *Commonwealth* v. *Fordham,* 417 Mass. 10, 18 (1994), quoting from *Davis* v. *Alaska,* 415 U.S. 308, 315-316 (1974).

3. *Appellate review of the error measured by the trial evidence.* Appellate consideration of whether a substantial risk of a miscarriage of justice may have occurred at trial involves determining whether the alleged error was outcome determinative of the verdicts, i.e., whether there is "serious doubt" verdicts of guilty might not have been returned had the error not been made. *Commonwealth* v. *LeFave,* 430 Mass. at 174. This standard of review requires, among other things, scrutiny of whether the error was material, and whether the Commonwealth's proof stood so firmly that, notwithstanding the particular and unpreserved claim of error at issue, there is no uncertainty that the defendant's guilt was fairly adjudicated by proof beyond a reasonable doubt. See *Commonwealth* v. *Amirault,* 424 Mass. at 645-647; *Commonwealth* v. *Alphas,* 430 Mass. 8, 13 (1999). See note 1, *supra.* The substantial risk of a miscarriage of justice standard has broad and general application in a range of criminal appeals and is, of course, not limited to confrontation clause violations. However, the substantial risk of a miscarriage of justice standard has points of commonality with the more particularized appellate standard of review governing the legal ramifications of a violation of constitutional confrontation rights. The commonality between the standards involves an appellate court's obligation to assess the materiality of the testimony that, in error, was not subject to confrontation by cross-examination, and to weigh the effect of this erroneously admitted unconfronted testimony against the strength of the Commonwealth's proof, notwithstanding the confrontation-related error. "In deciding whether a defendant's constitutional right to cross-examine and thus confront a witness against him has been denied because of an unreasonable limitation of cross-examination, a court must weigh the materiality of the witness's direct testimony and the degree of the [erroneous] restriction on cross-examination. The determination can only be made on a

case-by-case basis. Cross-examination that is somewhat impeded, but not totally foreclosed, presents a weaker case for finding a denial of rights than a complete absence of cross-examination." *Commonwealth* v. *Kirouac*, 405 Mass. 557, 561-562 (1989). In this case, because confrontation rights were foreclosed by a total negation of cross-examination, applying the converse principle of the last phrase in *Kirouac*, here a "[stronger] case for finding a denial of rights" is presented.

The Commonwealth argues that this case is an exception to the principle that reversal is warranted where there is a constitutional confrontation clause violation. The Commonwealth submits that Amy's testimony was brief, not very detailed with respect to the circumstances of the father's alleged act of rape of her, and that, therefore, any possible prejudice to the defendant was diminished. Contrary to the Commonwealth's position, our review of the record convinces us that although Amy's testimony was not lengthy, it was material, added corroboration to a number of points in the testimony of Sarah, and had a profound and deeply incriminating impact. Even accepting, as we do, that the Commonwealth's evidence with respect to proof of the rape of Sarah is sufficient to support a conviction under the *Latimore* standard,[3] it remains the case that the evidence concerning the rape of Sarah, when viewed apart from and isolated from the buttressing effects of Amy's testimony, was not exceptionally strong and did not (excepting Amy's testimony) have corroboration to balance certain inconsistencies.

We turn to the trial evidence to provide the context against which to measure the materiality and effects of Amy's testimony. The evidence was the two young girls lived with their mother. The mother and father had never married but had lived together sporadically. At the time of the events in question, they had lived separately for more than two years. At this juncture, however, the mother, having returned to Pittsfield after living in New York, moved into the same building where the defendant lived with his wife and stepchildren. The acts of rape were alleged by both daughters to have occurred while visiting their father in his apartment. Indeed, among the aspects

---

[3]*Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

of Amy's testimony that buttressed the testimony of Sarah were the fact of the sisters' visits with their father, and the details of the apartment where the father lived.

Beyond such corroboration, there were highly incriminating and damaging effects which flowed from Amy's testimony. Most significantly, in the final line of inquiry before Amy left the stand, the prosecutor asked Amy if she remembered "how many things happened between you and your dad?" Amy responded, "Two." Amy then stated she was too scared to give any further details. At this point, Amy could no longer remain on the witness stand. Nonetheless, the highly incriminating testimony already given by Amy that "two things" happened between her and her father must be considered against the backdrop and resonance of the prosecutor's opening statement, which referenced the defendant's rapes of his two daughters. Specifically, in that opening statement, the prosecutor told the jury that they would hear testimony from the two daughters, both victims of the father's rape, and that the older child, Sarah, would testify that the father digitally penetrated her, and the younger daughter, Amy, would testify that her father engaged in "unnatural sexual intercourse with her" and that he "touched her private with his private."

Given the foregoing, it is clear that Amy's statement that "two things" happened to her while with her father in his apartment was material and directly incriminating with respect to the jury's consideration of the father's rape of Sarah. The force of Amy's evidence is rendered more pronounced because the evidence concerning the rape of Sarah, as previously noted, was not overpowering and was marked by inconsistencies. Sarah described an incident wherein the defendant touched the inside of her privates with his finger. Sarah did not tell anyone about the incident for more than seven months. In addition, there was no evidence of physical injury. Further, there were inconsistencies in Sarah's descriptions of the father's acts. For example, on cross-examination, Sarah stated that there was only one incident of assault. This was in conflict with her grand jury testimony, which indicated that the assaults happened more than once. There was also an issue of animus between the girls' mother and father, who had never married, as well as an issue concern-

ing whether Sarah had told her mother about a prior sexual assault by the mother's former boyfriend.

The damaging nature of the incriminating reference by Amy to things done to her by her father must also be considered in light of the jury's clear focus on Amy's testimony — a focus evident from the note the jury submitted during deliberations. Specifically, the failure of trial counsel to take steps to address the effects of Amy's uncross-examined testimony is perplexing. The "behavior of counsel [in not moving to strike the uncross-examined testimony, and in not objecting to the supplemental jury instruction] fall[s] measurably below that which might be expected from an ordinary fallible lawyer," and "likely deprived the defendant of an otherwise available, substantial ground of defence" to the indictment involving Sarah. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). We can conceive of no tactical or strategic reason that would justify these omissions by defense counsel, as, had a motion to strike been made or objection raised to the jury instruction, such a motion most likely would have been granted and such objection mostly likely would have been sustained. Indeed, had such a motion to strike not been allowed, that would have been error. Where "[t]he facts to be raised on cross-examination . . . went to the essence of the defense," and the testimony is not "collateral or cumulative," the uncross-examined testimony should be stricken from the record and the jury so instructed. *Commonwealth* v. *Funches*, 379 Mass. 283, 292-293 (1979).

In short, defense counsel's actions were "manifestly unreasonable." *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). Added to the failings of defense counsel, the trial judge's erroneous instruction to the jury that they rightfully could consider Amy's testimony further compounded the constitutional confrontation clause violation.[4]

---

[4]The case was, from all that appears of record, much debated by the jury. The events involving the jury question and answer described above transpired on the first day of deliberations. The next day at approximately 4:30 P.M., the jury advised the judge that they were deadlocked. The judge delivered a *Tuey-Rodriquez* charge. See *Commonwealth* v. *Tuey*, 8 Cush. 1 (1851); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973). The deliberations resumed. Approximately one hour later, at 5:25 P.M., the jury informed the

4. *The fresh complaint testimony.*[5] Because the issue may arise in a retrial, we address the defendant's contention that the trial judge erred in allowing fresh complaint testimony from the mother of the two girls. The mother testified, over defendant's objection, that in March, 2003, Sarah had disclosed that the defendant had sexually assaulted her. The mother stated that the incident took place in the summer of 2002, and that Sarah had told her that there was only one incident of abuse.

Fresh complaint testimony is admissible if " 'the victim's actions were reasonable in the particular circumstances.' *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 439 (1994). . . . When there has been delay in the victim's making complaint, consideration should be given to factors which might explain that delay, particularly where the complainant is a child. Such factors include 'the child's age, the length of time the child has been away from an abusive setting, whether the perpetrator used threats or coercion, and whether the perpetrator is a relative or close friend of the child.' *Commonwealth* v. *Dockham*, 405 Mass. 618, 626 (1989)." (Citation omitted.) *Commonwealth* v. *Mazzone*, 55 Mass. App. Ct. 345, 351 (2002). Seven months elapsed between the time when the defendant moved out of the downstairs apartment and Sarah's disclosure to her mother. Where Sarah was only nine years old at the time of the abuse,

judge that they continued to be deadlocked, stating, "Much of the indecision from this jury is a result of 'what if' questions, probabilities of what may have happened outside the evidence presented, and speculation," and asking, "Is it permissible to use the above information to reach a verdict?" The judge answered this question in the negative, and the jury resumed deliberations, reaching a verdict in the early evening. See note 6, *infra*.

[5]The trial in this case occurred prior to the Supreme Judicial Court's decision in *Commonwealth* v. *King*, 445 Mass. 217, 242 (2005), cert. denied, 126 S. Ct. 1433 (2006), which modified the fresh complaint doctrine in several significant respects, including that "ostensible 'delay' in disclosing a sexual assault is not a reason for excluding evidence of the initial complaint; the timing of a complaint is simply one factor the jury may consider in weighing the complainant's testimony." Under the *King* doctrine, the fresh complaint evidence at issue in this appeal clearly would be admissible; however, the modifications to fresh complaint (now to be known as "first complaint") announced in the *King* decision only apply to cases tried after the issuance of the rescript in that case. *Id.* at 248. In any event, for the reasons set forth above, the admission of the fresh complaint evidence in this case met the evidentiary principles governing fresh complaint statements — including the timelines for admission — as existing prior to the extension in the *King* decision.

the alleged perpetrator of the abuse was her father, the defendant told her not to tell anyone, and the defendant was living downstairs from her at the time the abuse occurred, the trial judge did not err in determining that a seven-month delay was reasonable.[6]

*Judgment reversed.*

*Verdict set aside.*

---

[6]Given our reversal because of the violation of the constitutional confrontation right, we will only briefly address the other ground that the defendant advances as a basis for reversal. The defendant argues that the trial judge's instruction to the jury, at 6:01 P.M. on the Wednesday before Thanksgiving, that if there was no reasonable likelihood of a verdict by 6:20 P.M., the jury would return on Monday morning to complete deliberations, was coercive. There was no error, and we discern no coercion here. *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005, 1006 (1982). Indeed, the judge had previously informed the jury that, if a verdict on Wednesday was not possible, they would return on Monday, and that the jury would "have as much time Monday as you need to attempt to come to a verdict." The judge's instructions to the jury were simply part of the common, everyday administration of the court room. The fact that the jury returned with a verdict one minute before the 6:20 P.M. proposed end of the court day does not, in the chronology of this case, demonstrate that the verdict was coerced by any undue pressure of the trial judge. See *Commonwealth* v. *Smith*, 427 Mass. 245, 257-258 (1998).