NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-853

COMMONWEALTH

vs.

KEVIN S. ORISMA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On appeal from his conviction for assault and battery, the defendant argues that the judge erred in admitting testimony about the victim's military service and disability, and that a State police trooper's testimony that a mark on the victim's chin "looked like somebody hit him" was inadmissible opinion testimony. Concluding that the judge did not abuse his broad discretion in admitting both categories of testimony, we affirm.[1]

Background. We summarize the evidence that the jury could have found. On the morning of May 27, 2016, the victim left an appointment with a posttraumatic stress disorder (PTSD) counselor at a Veterans Administration (VA) hospital in Boston.

_____

[1] Our review of the case is hampered by the Commonwealth's failure to file a brief. See Commonwealth v. Mazzone, 55 Mass. App. Ct. 345, 346 n.1 (2002).

The victim had served in the military in Iraq, where he had been injured in an explosion that caused burns, hearing loss, and nerve damage in his legs and feet. He had a handicap placard that was hanging from the rear-view mirror of his car.

As the victim was driving westbound on Route 90, in the right lane, the driver of a Honda was trying to merge onto Route 90 from an onramp, but the victim drove past rather than allow the Honda to go ahead of his car. The driver of the Honda pulled behind the victim's car, sped up, swerved around a truck in the second lane, pulled into the right lane ahead of the victim's car, and then braked suddenly. The occupants of the Honda threw trash out of windows on both sides onto the victim's car. The victim telephoned the State police.

When the victim arrived at the Allston-Brighton toll plaza, the Honda was stopped there some distance before the toll booth. The defendant got out of the Honda and came up to the victim's car, angrily screaming racial epithets. The victim, who was on the telephone, said, "Say it to the trooper." A woman got out of the passenger side of the Honda. To the toll collector, the defendant said, "He's a fucking pussy."

State police Trooper Randall Roach arrived. The victim, who was visibly shaking, said that the defendant had yelled at him, thrown trash at his car, and "tried to punch him, hitting his shoulder." From the toll collector's video, the trooper

2

obtained a description of the Honda, including its registration number.

The next day, Trooper Roach went to the home of the Honda's owner, who was the father of the woman passenger; she was the defendant's girlfriend. As a result of that visit, the defendant telephoned Trooper Roach. The defendant said that when he pulled onto Route 90 near Copley Square, the victim applied his brakes, and that "pissed [the defendant] off." Then the victim "gave . . . the finger" to the defendant, which "pissed him off even more." The defendant told the trooper that he got out of his car at the tollbooth, exchanged words with the victim, and then drove away.

The defendant and his girlfriend both testified that the victim was the aggressor. They each testified that, as they tried to merge onto Route 90 in the Honda, the victim sped up and cut them off. The defendant beeped the Honda's horn, and the victim slammed on his brakes, causing the defendant to have to swerve around the victim's car. Both the defendant and the girlfriend testified that the defendant and the victim exchanged words, but it was the victim who used racial epithets. They each testified that they did not recall throwing anything out of the Honda at the victim's car. They each testified that when their Honda reached the tollbooth, the victim pulled up behind them, and the defendant got out of the Honda. The girlfriend

3

testified that the defendant walked towards the victim's car, but never got close enough to touch the victim; the defendant testified that he stood near the bumper of the Honda yelling at the victim. They each testified that the girlfriend got out and yelled at the defendant to get back into the Honda, and he complied. The defendant remembered saying something to the tollbooth worker and driving away. The defendant testified that there was no physical contact between him and the victim.

The jury convicted the defendant of assault and battery.[2] This appeal ensued.

Discussion. 1. Evidence of victim's disability and military service. The defendant moved in limine to preclude evidence that the victim "ha[d] a handicapped identification card hanging from his rear view mirror or that [he] is disabled or is a disabled veteran or suffers from PTSD and/or neuropathy." The judge denied the motion, and the defendant argues that the denial was error. He contends that the testimony went beyond necessary witness background information and improperly bolstered the victim's credibility. The defendant further argues that the testimony about the victim's military service, disability, and handicap placard was

_____

[2] The complaint originally charged assault and battery on a disabled person causing injury, G. L. c. 265, § 13K (b), but prior to trial the Commonwealth reduced the charge to assault and battery.

4

irrelevant to the charges and prejudiced him by appealing to the sympathy of the jury.

"All evidence must meet a threshold test of relevancy such that it has a rational tendency to prove an issue in the case" (quotations and citation omitted).  Commonwealth v. Yat Fung Ng, 491 Mass. 247, 264 (2023).  "A judge has broad discretion in making evidentiary rulings."  Commonwealth v. Martinez, 476 Mass. 186, 190 (2017).  See also L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  "When prejudice . . . is possible, the judge must weigh the probative value of the evidence against such danger."  Commonwealth v. Spencer, 465 Mass. 32, 51 n.22 (2013).  See also Mass. G. Evid. § 403 (2022).  "The weighing of the prejudicial effect and probative value of evidence is within the sound discretion of the trial judge, the exercise of which we will not overturn unless we find palpable error."  Commonwealth v. Bonds, 445 Mass. 821, 831 (2006).

The judge could conclude that the victim's testimony that he was a disabled veteran who had just left an appointment at a VA hospital was relevant as basic background information to present as full a picture as possible to the jury as to who the victim was and why he was driving on Route 90 at that time.  See Commonwealth v. Bradshaw, 385 Mass. 244, 269-270 (1982) ("The prosecution [is] entitled to present as full a picture as possible of the events surrounding the incident itself").

Further, evidence of the victim's disability was relevant in evaluating evidence before the jury -- for example, whether the victim drove aggressively and initiated the confrontation. See Mass. G. Evid. § 401 (2022). It was also within the judge's discretion to conclude that the evidence of the handicap placard hanging from the rear-view mirror of the victim's car was relevant to other issues presented by the evidence -- for example, the defendant's state of mind as to whether he could approach the victim and accost him without fear of reprisal.

Contrary to the defendant's argument, while the victim's military status and disability were relevant as background information to consider in determining his credibility, the prosecutor did not impermissibly use this testimony to "bolster" the victim's credibility. During her closing argument, the prosecutor did not even mention the victim's disability, his handicap placard, or his military status. Contrast Commonwealth v. McCoy, 59 Mass. App. Ct. 284, 295-297 (2003) (prosecutor's closing argument improperly urged jurors to trust police witnesses "who had long protected those streets").

The defendant characterizes the victim's military status and disability as prejudicial because it painted the victim in a sympathetic light and improperly appealed to the jurors' emotions. However, this line of testimony "cuts both ways." Commonwealth v. Gonzalez, 47 Mass. App. Ct. 255, 258 (1999).

6

Although the victim's military service may have portrayed him positively to some jurors, the evidence of the disability to his feet might be seen to corroborate the defendant's testimony that the victim braked suddenly, and the PTSD diagnosis might be seen to corroborate the defendant's testimony that the victim behaved aggressively. Cf. Yat Fung Ng, 491 Mass. at 265-266 & n.18 (evidence of defendant's military record as sharpshooter showing prowess with firearms was balanced by evidence of his honorable discharge and medals awarded).

The judge did not abuse his discretion in admitting evidence of the victim's disability and military history.

2. Trooper's testimony describing injury to victim. The defendant also argues that the judge erred in refusing to strike the trooper's testimony that a mark on the victim's chin "looked like somebody hit him." The defendant contends that the trooper's testimony was an improper lay opinion and went to the ultimate issue in the case.

After relating the victim's statement that the defendant had punched the victim, the trooper testified:

> TROOPER ROACH: "I think I did notice a mark on his chin. But I'm not a doctor. I didn't know if it was a nick, or a pimple, or anything. I didn't make an assumption. But it looked like -- looked like somebody hit him."
>
> DEFENSE COUNSEL: "Motion to strike."
>
> THE COURT: "No. I'm going to allow that."

7

The trooper's testimony that the mark on the victim's chin "looked like somebody hit him" was lay testimony based on observation that the judge could admit in his discretion.  See Commonwealth v. Burgess, 450 Mass. 422, 436 n.8 (2008) ("experienced police officer, or possibly even a lay witness, could opine whether a scene was suggestive of a struggle, just as a lay witness may testify regarding another person's sobriety").  It was not an opinion based on "scientific, technical, or other specialized knowledge," necessitating an expert.  Cf. Commonwealth v. Dobbins, 96 Mass. App. Ct. 593, 597 (2019) (grandmother's testimony about victim's learning disability was "statement of observed fact," not lay opinion).  See also Mass. G. Evid. § 701 (c) (2022).

Nor did the trooper's testimony express an opinion on the ultimate issue -- that the defendant punched the victim.  The trooper's testimony that the mark on the victim's chin "looked like somebody hit him" did not identify the defendant as the culprit.  While "[i]t is an opinion that does help to prove the ultimate issue, . . . it is not the witness's opinion concerning who is the perpetrator."  Commonwealth v. Cortez, 438 Mass. 123, 129 (2002).

Further, even if the trooper's statement were deemed improper, it was so equivocal that its prejudicial impact was minimal.  See Commonwealth v. Melendez, 490 Mass. 648, 664

8

(2022).  See also Commonwealth v. Colon, 49 Mass. App. Ct. 289, 293 (2000).  The trooper prefaced his statement that it "looked like somebody hit him" by conceding that he was not a doctor and that the mark could have been a result of something else, such as a nick or a pimple.

The judge did not abuse his discretion in denying the defendant's motion to strike the trooper's testimony that "it looked like somebody hit [the victim]."

Judgment affirmed.

By the Court (Englander,
  Grant & Brennan, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered:  February 28, 2023.

---

[3] The panelists are listed in order of seniority.