NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-783

COMMONWEALTH

vs.

RICHARD CORBETT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Richard Corbett,[1] appeals from his convictions for forcible rape of a child by joint enterprise, as a subsequent offense, G. L. c. 265, §§ 22B (e), 22C; rape of a child aggravated by age difference, as a subsequent offense, G. L. c. 265, §§ 23A, 23B; and two additional counts of aggravated rape of a child.  G. L. c. 265, § 23A.  On appeal, the defendant challenges an unobjected-to, in-court identification of the defendant.  We affirm.

---

[1] Given that the defendant and one of the witnesses, Amber Corbett, share a last name, we will refer to Amber by her first name.

Facts.  Viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, the jury could have found the following facts.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  In the summer of 2017, the then ten year old victim[2] lived with his brother, his mother, and his mother's friend, Heather Newton, in a three bedroom apartment in Framingham.  The victim was close to Newton and viewed her as a sister.

Newton and the defendant's sibling, Amber,[3] had dated on and off, and reconnected in June, 2017.  Amber began staying with Newton at the victim's mother's apartment.  Also at that time, the defendant moved into the victim's mother's apartment and began a relationship with the victim's mother, which he described as being "friends with benefits."  The defendant and sibling Amber spent time together in the apartment, and, at some point, they both bought matching colored contact lenses together.

---

[2] The victim's assigned sex at birth was female, but he is transgender and at the time of trial used the pronouns he, him, and his.  We will therefore refer to him by those pronouns.

[3] The defendant's sibling's legal name is Joshua Corbett, and, at the time of the rapes, that is the name she went by.  She is transgender and at the time of trial used the name Amber, and the pronouns she, her, and hers.  We will therefore refer to her by that name and those pronouns.

Through conversations that occurred both in-person and over Facebook Messenger, the siblings began formulating a plan to rape the victim. Amber testified that, during their first conversation about raping the victim, the defendant claimed he had already been engaging in sex acts with the victim. According to Amber, in a later conversation the defendant made it clear that he wanted Amber to have sex with the victim, and that he would likely do the same. Around June 28, 2017, after the defendant and Amber began discussing this plan, Newton was admitted to the hospital for at least a day. While Newton was in the hospital, Amber told the defendant that this was the time to execute their plan. Amber testified that they decided that she would have sex with the victim first, followed by the defendant. Amber went into the ten year old victim's room and sexually assaulted him. When Amber left the victim's room, the defendant asked for proof that Amber had had sex with the victim, so Amber showed him the victim's blood on her shorts. Amber then took a shower, and, when she left the bathroom after showering, saw the defendant outside the victim's room. At that point, the defendant told Amber he had had sex with the victim.

At trial, the victim testified that Amber came into his room and, when asked if Amber "did stuff to [his] body," answered affirmatively. The victim stated that the defendant penetrated the victim's vagina with his hands, tongue, and

penis.  The victim later told Newton what had happened by writing her a note, which, the victim testified, identified both Amber and the defendant as having sexually abused him.  Newton testified that the victim had identified only the defendant in this note and that, when she confronted the defendant, he stated that Amber had been the one who sexually assaulted the victim.  Newton stated that she gave this note to Amber and that it was then lost.

Detective Darren Crawford of the Framingham Police Department, who investigated the crime and interviewed the victim, testified that the victim, after being interviewed, wrote another note stating that the defendant had sexually assaulted him.  Detective Crawford also testified that Amber admitted her involvement in the incident and described the defendant's involvement.

At trial, the defendant testified that Amber had raped the victim, but that he had never touched the victim in a sexual way.

The in-court identification.  The prosecution asked each of its witnesses to identify the defendant.  When the prosecutor asked the victim to identify the defendant, whom he called Rick, the following exchange took place:

Q:  ". . . [T]he person Rick that you're talking about, do you see him in the courtroom?"

4

A: "Yeah."

Q: "Can you please tell me what he's wearing?"

A: "A white shirt."

Q: "Okay."

The Prosecutor: "Your Honor, I would ask the record reflect that he has identified the Defendant."

The Judge: "Can you -- you need to get more than just a white shirt."

The Prosecutor: "Sure."

Q: "Okay. So he has a white shirt. Can you tell me what else he's wearing? Does he have a tie or a color --"

A: "Yeah."

Q: "-- another color on him?"

A: "Yeah. A blue tie."

The victim then indicated that Rick was seated at the defense table, and the judge allowed the record to reflect that the victim had identified the defendant. There was no objection to any of this.

Defense closing. At trial, defense counsel argued that only Amber had raped the victim and that the victim, perhaps due to faded memory and the impact of the traumatic event, was mistaken about the defendant's involvement. Defense counsel suggested that the victim had a motive to implicate the defendant, rather than Amber, because the victim would not have wanted to upset Newton. Counsel also emphasized that Amber had

a motive to lie because Amber testified pursuant to a plea agreement with the Commonwealth under which, in exchange for her testimony, the Commonwealth agreed to recommend a significantly lesser sentence.

Discussion.  On appeal, the defendant raises issues related to the victim's in-court identification.  Specifically, the defendant argues that the prosecutor's follow-up question, asking the victim if the defendant was wearing a tie or another color, violated his rights to confrontation and that the prosecutor's cross-examination was leading, and led to an unduly suggestive in-court identification.  The defendant did not object to this question at trial, so we review these claims of error to determine whether there was any error, and, if so, whether it created a substantial risk of a miscarriage of justice.  Commonwealth v. Lavin, 101 Mass. App. Ct. 278, 285 (2022).

There is no merit to the defendant's argument that the in-court identification deprived him of his rights to confrontation and cross-examination.  In making this argument, he points to Commonwealth v. Brazie, 66 Mass. App. Ct. 315 (2006).  That case addressed a situation where a witness left the stand during direct examination, never returned, and was never cross-examined, but her testimony was not stricken.  Id. at 317-318.

6

Here, by contrast, the defendant was not deprived of the right to cross-examine the witness.  Nothing about the victim's identification of the defendant, or the way in which the more-detailed identification was brought out, limited the defendant's ability to cross-examine the victim about the identification or any other subject.  Identification of who was the alleged perpetrator was not an issue in this trial.  The victim remained on the stand and defense counsel was free to pursue the theory that the victim was either mistaken or lying about being raped by both the defendant and his sibling through questioning and, in fact, did so by eliciting that the victim had a motive to identify the defendant and not Amber as the victim would not have wanted to make Newton angry.

As to the suggestiveness of the in-court identification, when a witness has not participated in an out-of-court identification procedure before trial, their in-court identification is only admissible if "there is 'good reason' for its admission."  Commonwealth v. Crayton, 470 Mass. 228, 241 (2014).  Good reason may exist "where the eyewitness was familiar with the defendant before the commission of the crime, such as where a victim testifies to a crime of domestic violence," because, in such a situation, the jury understands this testimony merely "confirm[s] that the defendant sitting in

7

the court room is the person whose conduct is at issue." Id. at 242.

Here, the defendant lived in, or at a minimum spent a substantial amount of time in, the victim's mother's apartment; therefore, given the victim's familiarity with the defendant, there was good reason to allow the victim to identify him in court.

Although seeking an in-court identification was proper in these circumstances, the defendant takes issue with how the prosecutor elicited this identification. The defendant argues that, by asking if the defendant was wearing a tie or another color, the prosecutor impermissibly aided the victim in identifying the defendant.

While "suggestive wording and leading questions prior to participating in an identification procedure can influence the process of forming a memory," Commonwealth v. Gomes, 470 Mass. 352, 373 (2015), the defendant has not identified any evidence to support the conclusion that the prosecutor asked a suggestive question. To begin with, we know little about who was in the courtroom or what they were wearing. Before the challenged question, the victim had already identified a person wearing a white shirt as the defendant. The prosecutor's question mentioned a tie, which in some circumstances might have been suggestive, but the victim independently identified the

8

defendant as wearing a blue tie.  If, for example, there was no one in the court room that day who was wearing a white shirt without a tie, then the question could not have suggested a particular answer.  Likewise the defendant suggests that, because the defendant and his sibling apparently had matching colored contact lenses, the victim might have, at the time of the incident, confused the two of them, so that he mistakenly thought the defendant was also involved when he was not.  There is nothing in the record about the siblings having a similar physical appearance.  Even if the defendant's argument would have been bolstered had the victim mistakenly identified the sibling instead of the defendant, there is no evidence in the record that Amber was in the courtroom, let alone wearing a white shirt with no tie.  Accordingly, we discern no error.

Even if there were an error, the defendant has not shown that the question could have created a substantial risk of a miscarriage of justice.  Such a risk exists "if we have a serious doubt whether the result of the trial might have been different had the error not been made."  Commonwealth v. Azar, 435 Mass. 675, 687 (2002), quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).  Among other things, we consider "the significance of the error in the context of the trial" and "the strength of the Commonwealth's case" in making this determination.  Azar, supra.

Here, unlike the typical case involving in-court identification, the central issue was not the witness's ability to identify a stranger who had committed a crime.  Cf. Commonwealth v. Yang, 98 Mass. App. Ct. 446, 453 (2020). Rather, the victim was familiar with the defendant and the defendant raises only issues about the victim's ability to distinguish himself and Amber at the time of the rapes, and about the victim's ability to accurately recall the rapes.  The victim's ability to identify the defendant at the time of trial speaks to these two issues, if at all, only tangentially.

The jury could have found that the victim was able to distinguish between the defendant and his sibling at the time of the rapes; certainly, the evidence supported such a finding. The jury saw both of them testify.  Furthermore, there was plenty of evidence that the victim recalled the events accurately, as the victim's testimony and that of other witnesses aligned on several points, such as which sibling assaulted the victim first.  Therefore, even if the prosecutor's

question was improper, it did not create a substantial risk of a miscarriage of justice.

                                        Judgments affirmed.

                                        By the Court (Rubin, Henry &
                                          Walsh, JJ.[4]),

                                        _Paul Littlez_

                                        Clerk

Entered:   July 25, 2025.

---

[4] The panelists are listed in order of seniority.

11